UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

BRANDON MILLER and
CHRISTINE MILLER,

        Plaintiffs,

v.

AMERICOR LENDING GROUP, INC.,

        Defendant.
_____/

Case No.  1:06-CV-33

Hon. Richard Alan Enslen

**OPINION**

This matter is before the Court on Defendant Americor Lending Group, Inc.'s Motion to Dismiss and Motion for Summary Judgment. As Defendant Americor Lending Group, Inc. ("Americor") has presented matters outside the pleadings, the Motion is properly reviewed pursuant to Federal Rule of Civil Procedure 56 as a motion for summary judgment. *See* FED. R. CIV. P. 12(c). The Motion has been fully briefed and the Court discerns no reason for oral argument. W.D. MICH. LCIVR 7.2(d).

**I.    BACKGROUND**

In April or May 2005, Plaintiffs Brandon and Christine Miller began the process of looking for a new home. Plaintiffs lived in Sault Ste. Marie, Michigan and wanted to relocate to West Michigan because Brandon Miller had been offered a teaching position. In late April or early May, Christine Miller contacted Defendant about securing a conventional home loan. At this point in the sequence of events, Plaintiffs and Defendant allege substantially different facts.

Plaintiffs contend that Christine talked to Neil Scott ("Scott"), a loan officer for Defendant, and Scott told her about a 2% interest rate loan which was not negatively amortized. (C. Miller Aff.

¶ 5.)  Scott allegedly informed Christine, and in a later phone call also informed her husband, that in addition to having a fixed 2% interest, Plaintiffs would be able to choose their own payment each month.  (C. Miller Dep. 11-13; B. Miller Dep. 14-15.)  Plaintiffs further claim that the 2% fixed rate would last for five years, and then the rate would be tied to the treasury average thereafter.  (C. Miller Aff. ¶ 6.)  In May, Plaintiffs assert they received a Truth in Lending Disclosure and a Good Faith Estimate which supported the promise of a 2% interest rate loan.  (*See* Pls.' Compl. Exs. 1 & 2.)  Plaintiffs realtor also received and informed them of a pre-approval letter signed by Scott which indicated Plaintiffs were approved for 100% financing for a $180,000.00 loan.  (Pls.' Compl. Ex. 4.)  In August, Plaintiffs received an Amortization Schedule of payments from Scott which was based on a 2% fixed interest rate loan.  (Pls.' Compl. Ex. 3.)

In July 2005, Plaintiffs signed a purchase agreement on the house which they eventually bought.  (C. Miller Dep. 51-53.)  Before the closing, Plaintiffs were told their loan application needed to be reprocessed, or sent back to the underwriters because so much time had passed.  (*Id*. at 60-61.)  Shortly before the closing, Scott informed Plaintiffs that he was leaving the employ of Defendant for family reasons and someone else would take care of their loan.  (*Id*. at 70.)  The day of the closing, Plaintiffs received a call from an employee of Defendant stating that a 2% fixed rate loan was not feasible and that a 6.7% loan could be arranged but it would take longer.  (*Id*. at 71-72.)  Plaintiffs then contacted Pacific Mortgage and secured a loan through Fifth Third Bank.  (*Id*.)

Defendant relies upon the affidavit of Scott to guide its version of the facts.  Scott alleges Plaintiffs broached the subject of the 2% loan in their first phone call and he informed them that such a loan did not exist unless it was negatively amortized.  (Scott Aff. ¶¶ 5-6.)  Scott claims that Plaintiffs insisted on a fixed interest rate of 2%, and he instructed them that a 6% interest rate was

2

a better loan product for them. (Scott Aff. ¶¶ 5, 11.) Scott agrees he sent Plaintiffs a Truth In Lending Disclosure and Good Faith Estimate concerning a 2% interest rate; however, he claims the documents were for illustrative purposes only and he reminded Plaintiffs such a loan was unrealistic. (*Id*. at ¶ 8.) Later in May, Scott claims he incorporated the information provided by Plaintiffs into a Uniform Residential Loan Application. (*Id*. ¶ 13.) He then sent Plaintiffs another Truth in Lending Disclosure and Good Faith Estimate concerning a loan with an interest rate of approximately 6%.[1] (*Id*. at ¶ 14.) Scott also sent Plaintiffs pre-approval letter indicating that the interest rate was to be determined. (*Id*. at ¶¶ 18-20.) Scott agrees that he sent Plaintiffs a schedule of payments for a 2% fixed interest loan, but claims he reminded Plaintiffs that the interest rate on a loan they received would be higher. (*Id*. at ¶¶ 22-23.) Scott terminated his employment with Defendant before Plaintiffs' closing date of August 16, 2006. (*Id*. at ¶¶ 26-29.)

Plaintiffs subsequently filed this lawsuit alleging four counts against Defendant: Count I, Violation of the Equal Credit Opportunity Act; Count II, Breach of Contract; Count III, Fraud; Count IV, Violation of Mortgage Brokers, Lenders and Servicers Act.

## II.   LEGAL STANDARDS

Deciding a motion for summary judgment requires the Court to determine if there is no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file. *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The facts are to be considered in a light most favorable to the non-moving party, and ". . . all justifiable inferences are to be drawn in his favor." *Schaffer v. A.O. Smith*

---

[1] Plaintiffs deny ever receiving these documents.

*Harvestore Prod.*, 74 F.3d 722, 727 (6th Cir. 1996) (quoting *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted).

Once the movant satisfies its burden of demonstrating an absence of a genuine issue of material fact, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Kramer v. Bachan Aerospace Corp.*, 912 F.2d 151, 153-54 (6th Cir. 1990). The non-moving party may not rest on its pleading but must present "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting FED. R. CIV. P. 56(e)). It is the function of the Court to decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The question is "whether a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Id.* at 252. "The 'mere possibility' of a factual dispute is not enough,'" *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)), neither is the submission of *de minimis* evidence. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).

### III. ANALYSIS

#### A. Breach of Contract Claim

Defendant argues Plaintiffs' breach of contract claim fails as a matter of law because such a claim is barred by the Statute of Frauds as set forth in Michigan Complied Law § 566.132(2). The pertinent language is as follows:

> (2) An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:

>(a) a promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.

MICH. COMP. LAWS § 566.132. Defendant asserts that because it is a financial institution under this statute and Plaintiffs are seeking to enforce an oral promise, Plaintiffs' claim must fail in the face of this statute. Plaintiffs do not dispute that Defendant qualifies as a financial institution as defined in subsection 3 of § 566.132. Rather, Plaintiffs argue their claim should survive summary judgment because the four documents they received and relied upon constitute a written contract under the statute of frauds.

The Michigan Supreme Court has "declined to adopt narrow and rigid rules for compliance with the statute of frauds," and has instead adopted a case-by-case approach. *Kelly-Stehney & Assoc. v. MacDonald's Indus. Prods.*, 693 N.W.2d 394, 397-98 (Mich. App. 2005) (citing *Opdyke Inv. Co. v. Norris Grain Co.*, 413 Mich. 354, 367 (1982)). Further,

>a note or memorandum may be sufficient under the statute of frauds . . . even though it consists of several separate papers and documents, not all of which are signed by the party to be charged, and none of which is a sufficient memorandum in itself . . . [and] may be satisfied by several writings made at different times.

*Id*. at 399 (citations omitted). The Michigan Court of Appeals concluded in *Kelly-Stehney* that a writing need not include all the essential elements of a contract, but rather, the court should evaluate on a case-by-case basis whether the notes and memoranda have substantial probative value in establishing a contract.[2] *Id*.

---

[2]This has been dubbed the "the *Goslin* test" as it arises from *Goslin v. Goslin,* 369 Mich. 372 (1963), where the Michigan Supreme Court relied on a passage from Corbin on Contracts in finding that two signed receipts satisfied the statute of frauds. The relevant passage of Corbin on Contracts, Vol. 2, 498, p. 683, states:

>Let us proceed, therefore, with a general consideration of what constitutes a sufficient note or memorandum. We may well start with this one general

Plaintiffs submit that the four documents they received constitute a "writing" under the statute of frauds. The Court notes the pre-approval letter, which was signed by Scott, stated the interest rate was "to be determined." However, this fact is not fatal as in both the Good Faith Estimate and Truth in Lending Disclosure, a 2% fixed rate is quoted. A 2% fixed rate is also used in the Amortized Schedule of payments Plaintiffs received in August 2005. There are discrepancies between exact specifics of the deal Plaintiffs allege they were offered via telephone by Scott and the documents they received. However, in a summary judgment motion, the Court must evaluate the facts in a light most favorable to Plaintiffs. Further, under Michigan law, parol evidence is allowed to supplement a document. *Id*. As a result, Plaintiffs have succeeded in showing at least a genuine issue of material fact regarding whether a contract existed between the parties. It is true that none of the documents by themselves would constitute a contract under the statute of frauds; however, under Michigan law this is not required. Therefore, summary judgment on this issue is denied.

B.   Fraud Claim

Defendant argues Plaintiffs' fraud claim should be dismissed because it fails to satisfy the statute of frauds. However, for the same reasons discussed previously, this argument fails. Defendant also argues two additional reasons Plaintiffs' fraud claim should be dismissed; first, the fraud claim is based solely upon a future promise and second, because the documentation relied upon

---

    doctrine: There are few, if any, specific and uniform requirements. The statute itself prescribes none; and a study of the existing thousands of cases does not justify us in asserting their existence. Some note or memorandum having substantial probative value in establishing the contract must exist; but its sufficiency in attaining the purpose of the statute depends in each case upon the setting in which it is found.

*Goslin*, 369 Mich. at 376.

is contradictory to the terms Plaintiffs allege were promised by Scott and, therefore, Plaintiffs could not have reasonably relied upon the documents.

Under Michigan law, to establish a *prima facie* case of fraud, the plaintiff must show the following: (1) the defendant made a material representation; (2) it was false; (3) defendant knew it was false, or made it recklessly, without any knowledge of its truth; (4) it was made with the intent that it be relied upon by the plaintiff; (5) the plaintiff in fact relied up on the statement; and (6) the plaintiff was damaged. *See Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336 (1976). Further, in an action for fraudulent misrepresentation, "a plaintiff must establish a misrepresentation of past or existing fact, or a future promise with bad faith intent not to fulfill the promise at the time it was made. Future promises [alone] are contractual and do not constitute fraud." *Liberty Heating & Cooling, Inc. v. Builders Square, Inc.*, 788 F. Supp. 1438, 1444 (6th Cir. 1992) (internal citation omitted).

After review, the Court finds that construing the facts in a light most favorable to Plaintiffs, there are material questions of fact regarding whether the statements by Scott and the documents relied upon by Plaintiffs constituted a future promise, or were instead a material representation which was false at the time it was made. Scott stated at the time he sent Plaintiffs the Truth in Lending Disclosure document, the Good Faith Estimate and the Amortization Schedule, he knew that no such loan existed and he had no intention of actually securing a mortgage with those terms for Plaintiffs. (Scott Aff. ¶¶ 6, 8, 23.) Indeed, despite the claim that Scott explained to Plaintiffs any 2% loan would be negatively amortized, the Amortization Schedule sent to Plaintiffs in August did not reflect this feature. (*See* Pls.' Compl. Ex. 3.)

Further, Plaintiffs claim they relied upon the assurances of Scott and the four documents he sent to them to substantiate what Defendant had offered. Although the documents do not reflect word-for-word the deal that Scott offered Plaintiffs over the phone, the documents do set forth a loan which would have an interest rate of 2% and not be negatively amortized. Therefore, the documents received by Plaintiffs illustrate a loan that Defendant admits it does not offer, has never offered, nor never planned to offer. Accordingly, viewed in a light most favorable to Plaintiffs, genuine issues of material fact remain as to whether Plaintiffs were reasonable in relying upon the documents in question and also as to whether the documents and statements of Scott constituted merely a future promise of a loan or were knowingly false representations when made. Summary judgment is denied.

      C.      Michigan Mortgage Brokers, Lenders and Servicers Act Claim

Defendant offers the same arguments as to this claim as addressed previously under Plaintiffs' breach of contract and fraud claims. For the same reasons provided above, there are genuine issues of material fact which exist, and summary judgment will not be granted.

      D.      Equal Credit Opportunity Act Claim

Defendant contends the Equal Credit Opportunity Act ("ECOA") claim should be dismissed because it claims Defendant mailed an adverse action letter, indicating Plaintiffs had withdrawn their loan request, within the statutorily mandated 30-day period. Defendant has produced an adverse action letter, signed and dated, which substantiates its claim that such a letter was mailed on August 30, 2005. Defendant also submits the affidavit of Jeremy Foti, President of Americor, who attests to the mailing policies and practices of Defendant.

Under the ECOA, a creditor that refuses to extend credit on substantially the terms requested must provide the borrowers with notice of adverse action, stating the reasons for the action, or the applicant's right to a statement of reasons, within 30 days from receipt of a completed application. 15 U.S.C. § 1691(d); *see also* 12 C.F.R. § 202.9 (notice of counteroffer must be given within 30 days of the application).

Upon review, the Court finds that genuine issues of material fact exist as to whether Defendant violated the ECOA. Plaintiffs argue they never received the adverse action letter Defendant has produced and also contend they never withdrew their application for the 2% loan for which they applied. (C. Miller Aff. ¶ 18.) Plaintiffs had their mail forwarded from their previous address and further claim the new resident of the home would notify them of any mail that was not forwarded. (*Id.* at ¶ 19.) Additionally, Plaintiffs claim that even if they had received the adverse action letter Defendant claims it sent, the letter was incorrect as Plaintiffs never withdrew their application and any adverse action letter should have stated they were declined for a loan because Defendant did not offer the loan for which Plaintiffs applied. Defendant appears to argue that no such loan was ever extended, rather a loan with a 6% interest rate was the loan offered and Plaintiffs withdrew their application as to that loan. Whether Plaintiffs actually withdrew their application for a loan with a 2% interest rate such that the alleged adverse action letter would have been proper, is dependant on the question of whether such a loan was ever offered, available or actually extended. Therefore, viewed in a light most favorable to Plaintiffs, genuine issues of material fact exist. Summary judgment will be denied.

## IV.     CONCLUSION

The Court finds that genuine issues of material fact exist as to all of the claims alleged in Plaintiffs' Complaint. Accordingly, the Court will deny Defendant's Motion for Summary Judgment.

An Order consistent with this Opinion will issue.

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>            January 9, 2007 | /s/ Richard Alan Enslen<br>RICHARD ALAN ENSLEN<br>SENIOR UNITED STATES DISTRICT JUDGE |