UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

BRANDON MILLER and
CHRISTINE MILLER

    Plaintiff                                      Case No. 1:06-CV-33

v                                                      Hon. Richard Alan Enslen

AMERICOR LENDING GROUP, INC.

    Defendant

## PLAINTIFFS' TRIAL BRIEF

This action involves an attempted bait and switch mortgage. In an apparent attempt to sell the plaintiffs a mortgage loan, defendant represented that it would provide a loan at a 2 percent interest rate although it never intended to offer such a product. When plaintiffs learned that what they had been told was not true, they went elsewhere to obtain a loan. Defendant refused to provide the mortgage on the terms for which plaintiffs applied and the terms that defendant had promised. Therefore, defendant was required, under the Equal Credit Opportunity Act, to provide plaintiffs with a notice of adverse action. Because defendant failed to do so, it violated ECOA. Defendant's false representations as to the terms of the loan were fraudulent and violated state law.

## STATEMENT OF FACTS

In the spring of 2005, plaintiffs Brandon and Christine Miller were moving from Sault Ste. Marie to western Michigan. Brandon Miller is a high school teacher and had found a better position teaching social studies at Grant High School. The Millers shopped for a mortgage before

1

they shopped for a home because they wanted to determine what price home they could afford. A relative referred them to Americor Lending Group. Plaintiffs spoke with an Americor employee identified as Neil Scott and gave him a loan application over the phone.

Scott called back and told the plaintiffs that they could obtain a mortgage at an interest rate of 2 percent for 5 years, after which the interest rate would be adjusted to the "treasury average" and that the treasury average had not been more than 3.5 percent for the past 15 years. . Plaintiffs specifically asked Scott if this was a negatively amortizing mortgage and Scott assured them that it was not. Christine Miller discussed defendant's offer of a 2 percent mortgage with her current loan officer. He recommended that plaintiffs obtain a Truth in Lending statement and a good faith estimate and said "if we got those things in writing, then it would be legitimate." Ms. Miller asked Neil Scott for those documents and he provided them. In early May, 2005, defendant sent the plaintiffs a good faith estimate, a Truth in Lending disclosure, and an amortization schedule, explaining the terms of the loan. The Truth in Lending disclosure showed that payments on a $161,225.00 loan, at a 2.035 % annual percentage rate, would be $598.78 per month, The amortization schedule showed that the payments, on a $178,000 loan, as $657.92 per month. The total finance charge that plaintiffs would pay, in connection with the $178,000.00 loan, was $58,851.20.

Plaintiffs were told that they would be better able to bid on foreclosed property if they could demonstrate that their financing was already approved. So on May 20, 2005, defendant faxed to plaintiffs' real estate agent a commitment letter stating that defendant had run credit reports from all three credit bureaus and plaintiffs were approved for the loan, subject only to approval of the collateral. Plaintiffs did not see the letter at that time, but they were told that their

realtor had received it.

Based on defendant's oral and written representations, plaintiffs reasonably believed they could afford payments of about $658 per month and thus could borrow $178,000 to purchase a home. Plaintiffs looked for homes in that price range. On July 13, 2005, plaintiffs entered into a purchase agreement for a home in the Cedar Springs area for a purchase price of $178,698.91. Closing was scheduled for August 16, 2005. Brandon Miller was to begin his new teaching job August 18. The night before the scheduled closing, Neil Scott phoned the plaintiffs and said he would no longer be handling their loan - because his father was ill. Scott said that the loan would close on the 17th and someone would call. Plaintiffs had rented a truck and loaded all their belongings for the move from Sault Ste. Marie to Cedar Springs when they received a call from someone at Americor who told them Americor would not make the loan on the terms it had represented and that the program Neil Scott had described did not exist.

When they learned that defendant would not make the loan, plaintiffs looked for other financing. Plaintiffs subsequently obtained a mortgage loan (for 80% of the purchase price) and a home equity line of credit (for 20%) from Fifth Third Mortgage. The mortgage loan that plaintiffs were able to obtain provides for an annual percentage rate of 5.875 %. Payments, for principal and interest, are $845.60 per month for 360 months. The home equity line of credit has an annual percentage rate of 8.5 % for a loan of $35,700.00. Payments, for interest only, are $252.88 per month. The total finance charge for plaintiffs' 80 percent loan, is $164,468.94. The finance charge for the 20 % loan, amortized over 360 months, is approximately $63,000.

After this action was filed, defendant produced a set of documents describing a loan far different from the loan that defendant represented to the plaintiffs. These included a good faith estimate dated May 6, 2005, showing a 6 percent interest rate, a preliminary Truth in Lending disclosure of the same date showing an annual percentage rate of 6.2354 percent and payments,

for principal and interest, of $863.35 per month and a Statement of Credit Denial dated 8/30/05 stating as the reason for refusing to extend credit: "withdrawn at your request." Defendant claims that the good faith estimate and the Truth in Lending disclosure were prepared and mailed to the plaintiffs in May, 2005 and that, based on Americor's policies and practices, defendant believes the Notice of Credit denial was mailed to the plaintiffs on August 30, 2006. Plaintiffs testified that they never received any of these documents and believe they will show that these documents are forgeries prepared after the fact, apparently for purposes of this action.

ARGUMENT

**1.     EQUAL CREDIT OPPORTUNITY ACT VIOLATION**

The Equal Credit Opportunity Act requires that a creditor that refuses to extend credit on substantially the terms requested provide the borrowers with a notice of adverse action stating the reasons for such action, or the applicant's right to a statement of reasons, within 30 days from receipt of a completed application. 15 U.S.C. § 1691(d). Regulation B states that a notice of counteroffer must also be given within 30 days of the application.12 C.F.R. § 202.9 (a)(1). The ECOA notice requirement was designed to fulfill the twin goals of consumer protection and education. *Fischl v. General Motors Acceptance Corp*., 708 F.2d 143, 146 (5th Cir. 1983). Violation of the notice requirement is actionable without allegations of unlawful discrimination. *Jochum v. Pico Credit Corp.* 730 F.2d 1041 (5th Cir. 1984). Cf. *Treadway v Gateway Chevrolet Oldsmobile,* 362 F.3d 971, 977 (7th Cir. 2004): "In sum, the notice requirement serves two purposes: it discourages discrimination and it educates consumers as to the deficiencies in their credit status."

Defendant does not dispute the fact that plaintiffs applied for an extension of credit. The terms of the loan for which plaintiffs applied were those that defendant represented it would provide, i.e. a 2 percent interest rate for 30 years with no negative amortization. There is likewise no question that defendant refused to extend credit to the plaintiffs on substantially those terms. Plaintiffs will testify that they never received an adverse action notice and th

Defendant claims that it did send plaintiffs an adverse action notice, the August 30, 2005 notice which said that plaintiffs' credit application had been "withdrawn at your request.".

Plaintiffs deny that they ever received that notice and also claim that he notice could not possibly be accurate because there is no reason that plaintiffs would decide they no longer wanted a 2 percent mortgage.
.
## 2. BREACH OF CONTRACT

Plaintiffs will testify that defendant promised to provide them a mortgage with an interest rate at 2 percent for 5 years and then a rate equal to the treasury bill rate. Defendant told plaintiffs that the treasury bill rate had not exceeded 3.5 percent for at least 15 years. Plaintiffs' testimony is supported by the documents disclosing a 2 percent interest rate that defendant admits it provided. Plaintiffs relied on defendant's promise when they calculated how much they could afford to pay for a new home and committed to purchase a home that they could easily afford with a 2 percent interest rate.

Defendant claims that its agent, Neil Scott, told the plaintiffs that there was no 2 percent mortgage. Scott claims that he sent the plaintiffs a preliminary Truth in Lending disclosure, a Good Faith Estimate and an amortization schedule all showing a 2 percent rate, because plaintiffs wanted to see what the payments would be for a 2 percent mortgage even though plaintiffs knew there was no such mortgage available.

Defendant also claims that any promise it made to the plaintiffs cannot be enforced because it is barred by the statute of frauds. Although Michigan law requires that defendant's promise to make a loan be in writing, Michigan does not require that a writing contain all the terms of the agreement in order to satisfy the statute of frauds. Terms that are not reflected in the written document may be supplied by extrinsic evidence, including parole evidence or may be inferred by the court. Michigan has declined to adopt narrow and rigid rules for compliance with

5

the statute of frauds. *Kelly-Stehney v MacDonald's Industrial Products*, 265 Mich App 1056; 693 N.W.2d 394 (2005). A writing sufficient to satisfy the statute of frauds may consist of several documents, not all of which are signed. The writing requirement of the statute of frauds may be satisfied by several writings made at different times.

In the present case, it is not even necessary to look to parole evidence to determine the terms of the promised loan. Not only do the plaintiffs testify to the terms they were promised, but there are written documents, supplied by the defendant, which specify the interest rate, the number and amount of monthly payments and other details, including a Truth in Lending Disclosure, a Good Faith Estimate and an amortization schedule. There is also an approval letter signed by defendant's employee. That approval letter refers to "your loan request". Looking to the documents that defendant had previously supplied to the plaintiffs setting out the terms of the loan, it is clear that "your loan requests" refers to the 2% loan that defendant had disclosed. Taken together, the documents that defendant prepared and provided to the plaintiffs show that defendant's promise to provide the plaintiffs with a 2% mortgage loan is supported by writing sufficient to satisfy the statute of frauds.

**3.    FRAUD**

Plaintiffs applied for a mortgage and Defendant represented to plaintiffs the terms on which it would lend to the plaintiffs. i.e. at an interest rate of 2 percent, with monthly payments of $657.92. That representation was false. Defendant admits that it knew, at the time it made the representations, that plaintiffs would not get a loan at a 2% interest rate nor anything near that rate. There is little doubt that the reason loan terms are told to prospective borrowers is so the

borrowers can act on the representations. Plaintiffs did act on defendant's false representations, by committing to the real estate purchase and suffered damages as a result.

The estimates were clearly representations of material facts made with the intention that plaintiffs would proceed with the transaction in the belief that the loan would have the favorable terms disclosed. In fact, Michigan courts hold that "a material statement made in the course of contractual negotiations is presumptively made with the intention that it should be relied upon." *United States Fidelity and Guarantee Co. v Black,* 412 Mich 99, 120; 313 N.W. 2d 77 (1981).

**4.      MICHIGAN MORTGAGE BROKERS, LENDERS AND SERVICERS ACT**.

When defendant represented to the plaintiffs that it would provide them a 2 percent loan, while it had neither the intention nor the ability to make such a loan, defendant violated the Mortgage Brokers, Lenders and Servicers Act, M.C.L. 445.1651 *et. seq*:

"Se. 22. it is a violation of this act for a licensee or registrant to any of the following: ...

(a) engage in fraud, deceit, or material misrepresentation in connection with any transaction governed by this act.
(c) Intentionally or due to gross or wanton negligence, repeatedly fail to provide borrowers material disclosures of information as required by law." M.C.L. 445.1672.

"Sec. 22a. (1) A licensee or registrant shall not, directly or indirectly, make a false, misleading, or deceptive advertisement regarding mortgage loans or the availability of mortgage loans.
   (2) A licensee shall not advertise any size of loan, security required for a loan, rate of charge, or other condition of lending except with the full intent of making loans at those rates, or lower rates, and under those conditions, to mortgage loan applicants who meet the standards or qualifications prescribed by the licensee. " MCL 445.1672a.

Defendant's fraud described above establishes plaintiffs' claim for violation of that statute. Defendant also violated M.C.L. 1692(b) by failing to provide the plaintiffs with an

accurate good faith estimate as required by the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601(b) as well as the adverse action notice required, within 30 days of the application, by the Equal Credit Opportunity Act, 15 U.S.C. § 1691(d). Any of those notices would have given Mr. and Mrs. Miller some warning, before they committed to purchase a home they might not be able to afford, that they would not get the loan that they had been told.

The Act expressly prohibits any fraud, deceit, or material misrepresentation in connection with a mortgage transaction. By its terms, the act's prohibitions are not limited to fraud, deceit, or material misrepresentations which are contained in a writing that constitutes a binding contract and otherwise satisfies the statute of frauds. Moreover, the act does not require all the elements of common-law fraud. Under M.C.L. 445.1681, any person who shows a willful violation of the act is entitled to recover at least $250 in minimum statutory damages as well as injunctive and declaratory relief together with reasonable attorney fees and costs.

5.  **DAMAGES**

The loan that defendant represented provided for payments of $598.78 over 30 years, according to he Truth in Lending Disclosure.. According to the amortization provided by defendant, the payments would be $657.92. The total payments would be $215,562.56 or $236,051.20, respectively. The loan that plaintiffs were able to obtain, from Fifth Third Bank, requires payments of $845.60 per month on the 80% loan plus $247.50 on the 20% loan, if that loan is amortized over 20 years. Total payments are $304,418.94 plus 98,820.00: $403,238.94. The difference in total payments is $187,676.38 or $167,187.74.

The difference in monthly payments is at least $462.18 ($845.60 + $274.00 - $657.92). That stream of payments, reduced to present value at a 5 % discount rate, has a present value of

$86,095.64. Plaintiffs submit they are entitled to actual damages in the amount of $86,095.64.

The Equal Credit Opportunity Act also provides for punitive damages up to $10,000.00. In fact, an award of punitive damages is mandatory:

"*.* Any creditor, other than a government or governmental subdivision or agency, who fails to comply with any requirement imposed under this *title [15 USCS §§ 1691* et seq.] shall be liable to the aggrieved applicant for punitive damages in an amount not greater than $10,000, in addition to any actual damages provided in subsection (a)"

Plaintiffs will show that defendant engaged in deliberate and systematic fraud. Therefore, plaintiffs should recover punitive damages up to $10,000.

Both ECOA and the Mortgage Brokers, Lenders and Servicers Act are fee shifting statutes. If plaintiffs prevail on either of those claims, they will file a motion for fees after trial

Dated: May 1, 2007                                      /s/ Michael O. Nelson
                                                                                            Michael O. Nelson P23546
                                                                                            Attorney for plaintiff
                                                                                            648 Monroe NW, Ste 318
                                                                                            Grand Rapids, MI 49503
                                                                                            (616) 559-2665.

.